**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x
                                                                  :
In re:                                                            :         Chapter 11
                                                                  :
        GENEVER HOLDINGS, LLC,                                    :
                                                                  :
                                     Debtor.                      :         Case No. 20-12411-JLG
                                                                  :
-------------------------------------------------------------------------x


**MEMORANDUM DECISION AND ORDER DENYING DEBTOR'S MOTION TO**
**APPROVE THE STIPULATION OF SETTLEMENT AND MOTION TO RETAIN**
**MELANIE L. CYGANOWSKI, ESQ. TO ACT AS THE DEBTOR'S SALES OFFICER.**


A P P E A R A N C E S :


GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
*Counsel for the Debtor*
1501 Broadway, 22nd Floor
New York, New York 11530
By:    Kevin J. Nash, Esq.

O'MELVENY & MYERS LLP
*Counsel for Pacific Alliance*
*Asia Opportunity Fund L.P.*
7 Times Square
New York, New York 10036
By:    Stuart Sarnoff, Esq.
        Edward Moss, Esq.

MAYER BROWN LLP
*Counsel for Pacific Alliance*
*Asia Opportunity Fund L.P.*
1221 Avenue of the Americas
New York, New York 10020
By:    Douglas E. Spelfogel, Esq.
        Derek L. Wright, Esq.

TROUTMAN PEPPER
HAMILTON SANDERS LLP
*Counsel for Bravo Luck Limited*
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
<u>By</u>:    Francis J. Lawall, Esq.

WILLIAM K. HARRINGTON
UNITED STATE TRUSTEE, REGION 2
201 Varick Street
New York, New York 10014
<u>By</u>:    Richard C. Morrissey, Esq.

**<u>HON. JAMESL. GARRITY, JR.</u>**
**<u>U.S. BANKRUPTCY JUDGE</u>**

**<u>Introduction</u>**[1]

      Genever Holdings LLC (the "Debtor") is a New York limited liability company whose

purported sole asset is the apartment Residence in The Sherry Netherland Hotel in New York

City. It commenced this single asset chapter 11 case on the heels of the entry of a judgment in

New York State Court in favor of Pacific Alliance Asia Opportunity Fund, L.P. ("PAX"), and

against Mr. Kwok Ho Wan a/k/a Miles Kwok ("Mr. Kwok"), the Debtor's principal, as guarantor

of certain indebtedness due and owing to PAX by a non-Debtor entity affiliated with Mr. Kwok.

In the State Court Litigation, PAX contends that it can pierce the corporate veil and seize the

Residence in satisfaction of the judgement. Bravo Luck Limited ("Bravo Luck") is among the

Debtor's creditors. It is a British Virgin Islands ("BVI") corporation under the control of Mr.

---

[1]    Capitalized terms not defined in the Introduction have the meanings ascribed to them below.  Citations to "ECF No.__" refer to documents filed of record in the chapter 11 case (No. 20-12411).

Kwok's son, Mr. Qiang Guo. It contends that it advanced $70 million used to purchase the Residence. It maintains that it is the rightful owner of the Residence – and thus contests PAX's assertion that it can seize the Residence in satisfaction of its judgment. Alternatively, it contends that it is a creditor of the Debtor. It has filed a proof of claim herein.

The Debtor says that it commenced this case to maximize the value of the Residence for the benefit of its creditors. It has reached a settlement with Bravo Luck and PAX that is embodied in the agreement that is the subject of one of the motions before the Court. In broad strokes, the Settlement Agreement calls for PAX to be granted relief from the automatic stay so that the State Court Litigation can proceed to judgment on all matters, including the veil piercing issues (but not execution of any judgment), and for the Debtor to sell the Residence and escrow the sales proceeds pending resolution of the dispute over the ownership of the Residence. PAX is clear that it does not trust the Debtor to conduct an open and honest process to sell the Residence and will not agree to an arrangement that leaves the Debtor with any control over the sale process. As such, a key element of the agreement is that it calls for the Debtor to hire the Hon. Melanie J. Cyganowski (Ret.) ("Ms. Cyganowski"), as its employee, pursuant to the terms of that certain Engagement Letter, to act as the Debtor's Sales Officer and to vest her with complete control over the sale process.[2] In furtherance of the Settlement Agreement, and to help insure that Ms. Cyganowski can operate independently from the Debtor's Member and Manager, the Debtor has agreed to amended its Operating Agreement (subject to the Court's approval of the Motions) to provide that the Debtor cannot revoke or terminate Ms. Cyganowski's appointment

---

[2]    Ms. Cyganowski is a member of the law firm of Otterbourg P.C. ("Otterbourg"). She will retain her association with Otterbourg if she is installed as the Debtor's Sales Officer.

as its Sales Officer and that neither the Debtor nor its members or managers can terminate Ms.
Cyganowski's employment without an order of this Court.

The matters before the Court are the Debtor's motion pursuant to sections 105 and 363(b)
of the Bankruptcy Code to retain Ms. Cyganowski under the terms of the Engagement Letter, as
supplemented by relevant provisions of the Settlement Agreement (the "Sales Officer Motion"),[3]
and its motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules") to approve the Settlement Agreement (the "Settlement Motion," with the
Sales Officer Motion, the "Motions").[4] The United States Trustee (the "U.S. Trustee") objects to
the Motions (collectively, the "Objection"). Essentially, he contends that there is no authority
under the Bankruptcy Code for the Debtor to retain Ms. Cyganowki as the Sales Officer on the
terms set forth in the Engagement Letter and the Settlement Agreement. The Debtor, PAX and
Bravo Luck oppose the Objection.

The Court finds that the Settlement Agreement is fair and reasonable, and that the Debtor
has demonstrated grounds under sections 105(a) and 363(b) of the Bankruptcy Code for
employing Ms. Cyganowski as its Sales Officer pursuant to the terms of the Engagement Letter
and Settlement Agreement. However, certain of the proposed terms of Ms. Cyganowski's
employment exceed the scope of relief available to the Debtor under sections 105(a) and 363(b).
For that reason, the Court denies the Motions.

---

[3]    *See Debtor's Motion to Engage and Retain Melanie L. Cyganowski, Esq. to Act as the Duly Appointed Sales Officer for the Debtor's Bankruptcy Estate* [ECF No. 72].

[4]    *See Debtor's Amended Motion to Approve Attached Stipulation of Settlement with Bravo Luck and PAX* [ECF No. 62].

## Jurisdiction

This Court has jurisdiction over the Motions pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

## Background

On March 16, 2011, Shiny Times Holdings Ltd. ("Shiny Times"), an entity controlled by Mr. Kwok that is incorporated in the BVI, and PAX entered into the "2011 Loan Facility." That agreement superseded prior agreements and memorialized Shiny Times' debt to PAX as of December 31, 2010 at $46,426,489, with a 15% annual interest rate and a June 30, 2012 repayment date. *See* Moss. Decl. I Exs. 3, 4.[5] The 2011 Loan Facility was conditioned on Mr. Kwok's execution of a personal guarantee that secured performance by Shiny Times. In March 2011, Mr. Kwok and PAX entered a contract (the "2011 Personal Guarantee") under which Mr. Kwok personally guaranteed the 2011 Loan Facility. Shiny Times defaulted under the 2011 Loan Facility and the parties failed to consummate a settlement agreement. *See id.* Exs. 6-9. In 2015 PAX initiated liquidation proceedings against Shiny Times in the BVI seeking to recover the debt. Shiny Times was found to be insolvent in the liquidation proceeding -- so PAX recovered nothing. *See id.* Ex. 23. On April 18, 2017, PAX filed suit against Mr. Kwok in New York Supreme Court for breach of the 2011 Personal Guarantee (the "State Court Litigation"). On September 15, 2020, the state court granted PAX summary judgment holding Mr. Kwok liable under the 2011 Personal Guaranty. *See id.* Ex. 50.

---

[5]    *See Declaration of Edward Moss, Esq., In Support of Pacific Alliance Asia Opportunity Fund L.P.'s Motion to Modify the Automatic Stay to Proceed with State Court Litigation, and Related Relief* (the "Moss Decl. I") [ECF No. 14].

On October 12, 2020, the Debtor filed a voluntary petition for relief (the "Petition") under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Case"). *See* Official Form 201 Voluntary Petition for Non-Individuals Filing for Bankruptcy [ECF No. 1]. The Debtor has offices at The Sherry Netherland Apartments, 781 Fifth Avenue, Unit 1801, New York, NY 10022 (the "Residence"). *See* Debtor's Declaration Pursuant to Local Bankruptcy Rule 1007-2 [ECF No. 1] ("Rule 1007 Decl.") ¶ 1. The Debtor is a New York limited liability company. Mr. Kwok is the sole Member of the Debtor and is the Manager designated under the Debtor's Operating Agreement. *See id.* ¶ 22. The Debtor is wholly owned by Genever Holdings Corp. ("Genever BVI"), an entity incorporated in the BVI. Mr. Kwok is Genever BVI's sole shareholder and director. The Debtor's sole asset is its ownership interest in the Residence which is memorialized by approximately 3,000 shares of Sherry Netherland cooperative stock and corresponding proprietary leases. *See id.* ¶ 3. The Debtor says that it acquired the Residence in 2015 for the sum of approximately $70 million, largely with funding provided by Bravo Luck pursuant to a certain trust agreement, plus approximately $5 million advanced by Mr. Kwok's son, Mr. Qiang Guo. *See id.* ¶ 4. The trust recognizes Bravo Luck as the beneficial owner of the Residence on the basis that it funded most of the purchase price. *See id.* ¶ 5. Since the acquisition of the Residence, Bravo Luck has also chiefly funded maintenance charges and assessments. *See id.*

The Debtor commenced this Chapter 11 Case so that "[b]efore the [Residence] become[s] further entangled in litigation involving competing claims of ownership, the Debtor . . . [can] gain the needed flexibility to be in a position to maximize value under the rehabilitative power of the Bankruptcy Court." *See id.* ¶ 10. The Debtor explains that:

> an important threshold goal of the Chapter 11 case is to obtain a resolution of the competing claims relating to the [Residence] as between Bravo [Luck] and

[PAX]. Once this issue is resolved or settled, the matter involving [PAX] will be clarified and the Debtor will then be in a position to promulgate a plan of reorganization. Pending such a determination, Chapter 11 will help the Debtor preserve the status quo.

*Id.* at ¶ 12. Several parties in interest have sought and opposed varying requests for relief during the pendency of this case. On or about December 16, 2020, PAX moved pursuant to section 362(d) of the Bankruptcy Code for entry of an order modifying the automatic stay, so that it may proceed with the State Court Litigation, and address attendant claims of non-debtor third-parties (the "Stay Relief Motion").[6] On or about January 5, 2021, Bravo Luck objected to the Stay Relief Motion.[7] The Debtor filed a response objecting to the Stay Relief Motion.[8] On or about January 8, 2021, PAX moved for an order under section 1112(b) of the Bankruptcy Code converting the Debtor's case to a case under chapter 7 of the Bankruptcy Code, or, in the alternative, for an order under section 1104(a) appointing a chapter 11 trustee to administer the Debtor's estate (the "Conversion Motion").[9] Bravo Luck objected to the Conversion Motion.[10]

---

[6]    *See Pacific Alliance Asia Opportunity Fund L.P.'s Memorandum of Law in Support of Motion to Modify the Automatic Stay to Proceed with State Court Litigation, and Related Relief* [ECF No. 13]. In support of the Stay Relief Motion, PAX has also filed the Moss Decl. I. On January 22, 2021, PAX submitted its reply in further support of the Stay Relief Motion [ECF No. 41].

[7]    *See Objection of Bravo Luck Limited to Motion of Plaintiff Pacific Alliance Asia Opportunity Fund L.P. to Modify the Automatic Stay to Proceed with State Court Litigation, and Related Relief* [ECF No. 21].

[8]    *See Response and Reservation of Rights with Respect to the Motion of Pacific Alliance Asia Opportunity Fund for Relief from the Automatic Stay* [ECF No. 22].

[9]    *See Pacific Alliance Asia Opportunity Fund L.P.'s Motion for an Order Under 11 U.S.C. 1112(b) Converting the Debtor's Case to a Case Under Chapter 7 or, in the Alternative, for an Order Under 11 U.S.C. 1104(a) Appointing a Trustee to Administer the Debtor's Estate* [ECF Nos. 35, 36]. In support of the Conversion Motion, PAX also filed the *Declaration of Edward Moss in Support of Pacific Alliance Asia Opportunity Fund L.P.'s Motion for an Order Under 11 U.S.C. 1112(b) Converting the Debtor's Case to a Case Under Chapter 7 or, in the Alternative, for an Order Under 11 U.S.C. 1104(a) Appointing a Trustee to Administer the Debtor's Estate* [ECF No. 37].

[10]    *See Objection of Bravo Luck Limited to Motion of Pacific Alliance Asia Opportunity Fund L.P. for an Order Under 11 U.S.C. § 1112(b) Converting the Debtor's Case to a Case Under Chapter 7 or, in the Alternative, for an Order Under 11 U.S.C. § 1104(A) Appointing a Trustee to Administer the Debtor's Estate* [ECF No. 44].

Case 22-50592    Doc 123    Filed 09/01/21    Entered 09/01/21 18:19:42    Page 8 of 29


The Sherry-Netherland, Inc. issued a joinder and reservation of rights with respect to the motion.[11] The Debtor opposed the Conversion Motion.[12]

On March 5, 2021, the Debtor filed the Settlement Motion. On March 22, 2021, the United States Trustee moved for the entry of an order pursuant to section 1104 of the Bankruptcy Code directing the appointment of a chapter 11 trustee in the Debtor's case (the "Trustee Motion").[13] On April 9, 2021, the Debtor filed the Sales Officer Motion. On April 20, 2021, Bravo Luck objected to the Trustee Motion.[14] On May 4, 2021, PAX[15] and the Debtor[16] filed objections to the Trustee Motion. On May 24, 2021, the parties submitted supplemental briefing in connection with the Settlement Motion and Sales Officer Motion.[17] The parties filed responses

---

[11]    *See Joinder and Reservation of Rights of The Sherry-Netherland, Inc. With Respect to Pacific Alliance Asia Opportunity Fund L.P.'s Motion for an Order Under 11 U.S.C. § 1112(b) Converting the Debtor's Case to a Case Under Chapter 7 or, in the Alternative, for an Order Under 11 U.S.C. § 1104(A) Appointing a Trustee to Administer the Debtor's Estate* [ECF No. 45].

[12]    *See Debtor Statement in Opposition to the Motion of Pacific Alliance Asia Opportunity Fund L.P. for an Order Under 11 U.S.C. § 1112(b) Converting the Debtor's Case to a Case Under Chapter 7 or, in the Alternative, for an Order Under 11 U.S.C. § 1104(A) Appointing a Trustee to Administer the Debtor's Estate* [ECF No. 84].

[13]    *See United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code* [ECF No. 64].

[14]    *See Objection of Bravo Luck Limited to United States Trustee's Motion for an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code* [ECF No. 76].

[15]    *See Pacific Alliance Asia Opportunity Fund L.P.s Opposition to the United States Trustees Motion for an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to Section 1104 of the Bankruptcy Code* [ECF No. 81].

[16]    *See Debtor's Opposition to the Motion of the U.S. Trustee Seeking the Appointment of an Operating Trustee Under 11 U.S.C. § 1104* [ECF No. 83].

[17]    *See Objection To The United States Trustee To Debtor's Application To Employ A Sales Officer, And Reply In Further Support Of Motion Of The United States Trustee For The Appointment Of A Chapter 11 Trustee Pursuant To Section 1104 Of The Bankruptcy Code* [ECF No. 94] (the "U.S. Trustee Supplement"); *Debtor's Supplemental Memorandum Of Law (i) In Further Support Of Its Motion To Approve The Settlement Reached With Bravo Luck, PAX And The Sherry Netherland, And (ii) In Further Opposition To The Motion Of The U.S. Trustee Seeking The Appointment Of An Operating Trustee* [ECF No. 95]; *Supplemental Brief of Pacific Alliance Asia Opportunity Fund L.P. In (I) Further Support Of Debtor's Amended Motion To Approve Stipulation Of Settlement And (II) Opposition To U.S. Trustee's Objection To The Settlement Agreement* [ECF No. 96]; and *Brief Of Bravo Luck Limited In Support Of Debtor's Amended Motion To Approve Attached Stipulation Of Settlement With Bravo Luck And PAX* [ECF No. 99].

and supplemental briefs on May 28, 2021.[18] Additionally, in connection with the Settlement

Motion and the Sales Officer Motion, the Debtor filed an appendix of documents (the

"Appendix").[19] The Court has conducted several hearings on the Motions.

## The Sales Officer Motion

In the Sales Officer Motion, the Debtor seeks to engage and retain Ms. Cyganowski as

the Debtor's "Sales Officer" pursuant to sections 105 and 363 of the Bankruptcy Code in

accordance with the terms of the Engagement Letter annexed as Exhibit A to the motion and as

supplemented by the Settlement Agreement. The Debtor asserts that the position of Sales Officer

is the product of a compromise among the Debtor, PAX, and Bravo Luck. It describes the post as

a "hybrid position designed to promote neutrality and independence in the pursuit of a sale of the

Residence." Sales Officer Motion ¶ 16. The Debtor explains that as its Sales Officer, Ms.

Cyganowski shall chiefly oversee the sale of the Residence through a conventional bankruptcy-

type sale process, in consultation with Bravo Luck and PAX and, if necessary, provide mediation

services. *See id.* ¶¶ 8, 9. During the several hearings on the Motions, the Debtor was clear that it

---

[18]    *See Reply Of The United State Trustee Regarding Debtor's Application To Employ A Sales Officer, And Motion Of The United States Trustee For The Appointment Of A Chapter 11 Trustee Pursuant to Section 1104 Of The Bankruptcy Code* [ECF No. 103] (the "U.S. Trustee Reply"); *Debtor's Reply Memorandum Of Law In Response To The Submission Of The U.S. Trustee* [ECF No. 104]; *Reply Brief Of Bravo Luck Limited To Objection Of The United States Trustee To Debtor's application To Employ Sales Officer, And Reply In Further Support Of Motion Of The United State Trustee For The Appointment Of A Chapter 11 Trustee Pursuant to Section 1104 Of The Bankruptcy Code* [ECF No. 105]; and *Supplemental Response of Pacific Alliance Asia Opportunity Fund L.P. In Opposition To the Objection Of the Untied Stats Trustee To Debtor's Application To Employ A Sales Officer, And Reply In Further Support Of Motion Of The Unites States Trustee For The Appointment Of A Chapter 11 Trustee Pursuant to Section 1104 Of The Bankruptcy Code* [ECF No. 106].

[19]    *See Debtor's Appendix Of Documents Relative To The Settlement Agreement* [ECF No. 97].  The Appendix includes:

      A.     The Amended and Restated Settlement Agreement (the "Settlement Agreement").
      B.     The Liability Company Agreement Genever Holdings LLC (the "Operating Agreement").
      C.     The unexecuted resolution ratifying certain amendments to the Operating Agreement (the "Resolution").

expects Ms. Cyganowski to play two roles herein. She will be employed by the Debtor as its Sales Officer as called for under the Settlement Agreement. In addition to serving in that operational capacity, she will serve as counsel to the Debtor on matters relating to the sale process. The Debtor states that Ms. Cyganowski is not to act as a trustee or examiner; it likens her role to that of Chief Restructuring Officer with defined functions. *See id.* ¶ 16. *See also id.* ¶ 17 ("[Ms.] Cyganowski is being appointed by the Debtor as an officer as provided for under the Engagement Letter and will fundamentally function as an independent and disinterested responsible party, designated by the Debtor as its chief officer over the sale process as detailed more particularly in the Settlement Agreement and operating with the consent of all major creditors."). The Debtor maintains that its management will retain all other rights and obligations unrelated to the sale of the Residence, which includes monthly reporting, payment of all required trustee fees, and efforts to emerge from Chapter 11. *See id.*

**The Settlement Agreement**

In broad strokes, the Settlement Agreement addresses the liquidation of claims and resolution of litigation against the Debtor, and the marketing and sale of the Residence. As to the former, the Settlement Agreement provides that: (i) PAX is granted stay relief to prosecute and for the Debtor to defend, the State Court Litigation, with the stay to otherwise remain in place for all other purposes, including relating to enforcement or collection of any judgment entered against the Debtor in the State Court Litigation, pending further order of the Bankruptcy Court upon further notice to all parties; (ii) the agreement is without prejudice to the rights of any party, including Bravo Luck and PAX to proceed with the BVI Litigation,[20] provided that PAX,

---

[20]    The Settlement Agreement defines "BVI Litigation" as

those certain actions filed by PAX in the BVI in 2020 under case No. BVIHCM 2020/0137 against: (i) Genever BVI, (ii) Bravo Luck, (iii) Kwok, and (iv) Guo, seeking, among other things,

Bravo Luck, Mr. Kwok, Mr. Qiang Guo or any of his or Bravo Luck's affiliates reserve the right to assert claims in the Bankruptcy Court relating to its status as a creditor of the Debtor, and PAX reserves all rights to oppose such claims on any grounds; (iii) PAX shall withdraw the Conversion Motion, and agrees not to support or encourage a motion for the appointment of a trustee or conversion by any other party herein; and (iv) The Sherry Netherland is granted stay relief to apply all accrued and owing post-petition maintenance fees and assessments as of the date hereof, and thereafter on a monthly basis, from the current security deposit, with the stay to otherwise remain in place for all other purposes. *See* Settlement Agreement ¶ 7. The U.S. Trustee does not challenge any of those provisions for the Settlement Agreement.

The focus of the dispute herein is on the provisions of the Settlement Agreement that address the process (the "Sale Process") that the Debtor will employ in marketing and selling the Residence. To summarize, the settling parties agree to the Debtor's retention of one or more real estate brokers (the "Broker"), the general terms for marketing the Residence (the "Marketing Terms"), and the procedures for selling the Residence (the "Sales Procedures"). *See id.* ¶¶ 3, 4, 5. In doing so, at the insistence of PAX and with the consent of Bravo Luck, the Debtor has delegated all control over the Sale Process, including the execution of Marketing Terms and Sales Procedures, to Ms. Cyganowski, in her capacity as an employee of the Debtor in the newly created position as the Debtor's Sales Officer. In that capacity, Ms. Cyganowski will:

> Select the Broker to be retained by the Debtor's estate, subject to the rights of Bravo Luck and PAX to object to the selection of the Broker. *See id.* ¶ 3.
>
> Oversee and interface with the Broker and shall have final authority as delegated to her by the Debtor over the Debtor's decision making, the sale process and the

---

to enforce (a)the Judgment arising in the State Court Action; and (b) the Defense and Counterclaim filed on January 14, 2021, by Bravo Luck and Guo against PAX.

Settlement Agreement ¶ 1d.

selection of a Qualified Buyer and Qualified Offer, and successful and backup offers for the sale of the Residence, subject to Bankruptcy Court approval with right of objection by Bravo Luck and PAX. In the exercise of such powers, the Sales Officer shall consult with the Debtor, Bravo Luck and PAX. *See id.* ¶¶ 2, 6.

The agreement provides that the Sales Officer will carry out her duties, and obligations without the necessity for further approvals from the Debtor's Member and Manager as such approvals have already been given by the Debtor in the exercise of its business judgment. *See id.* ¶ 27 C. Moreover, in vesting this authority in the Sales Officer, the Debtor has agreed that it "cannot revoke Judge Cyganowski's appointment and/or authority as Sales Officer without Bankruptcy Court approval." *Id.* ¶ 27 E. The Debtor also has agreed that it will play no role in the selection of a replacement Sales Officer in the event that paragraph 27 D.f. of the Settlement Agreement is triggered (i.e., death, incapacity, resignation, or removal of Sales Officer). *See also id.* ¶¶ 7d.[21]

The Settlement Agreement calls for Ms. Cyganowski to be paid on an hourly basis predicated on her current billing rate. *See id.* ¶ 27 B. It also provides that although Otterbourg is not being separately retained, Ms. Cyganowski will be assisted by a junior lawyer and a paralegal and, from time to time if required, by one or more senior lawyers (collectively, the

---

[21]   The Settlement Agreement states, as follows:

> Recommendation and Appointment of the [Sales Officer]: In connection with execution of this Settlement Agreement, the Debtor, Bravo Luck and PAX have previously agreed upon Judge Cyganowski as the designated [Sales Officer]. In the event that paragraph 27(D)(f) is triggered, then Bravo Luck and PAX shall designate a total of four candidates for consideration as the designated [Sales Officer], two by Bravo Luck and two by PAX (total of four by all Parties) (the "List"). The Parties shall confer to select an agreed [Sales Officer] from such List. If an agreement on selection of [a Sales Officer] cannot be reached by the Parties, then the Bankruptcy Court shall appoint the [Sales Officer] from such List, unless the Court finds an irreconcilable conflict to exist, after which the Office of the United States Trustee, after consultation with Bravo Luck and PAX, may submit recommendations to the Court for other independent and disinterested persons to serve as [Sales Officer].

Settlement Agreement ¶ 7d.

"Assisting Personnel") as needed and where appropriate in furtherance of her performance as the Sales Officer. The agreement provides that the junior lawyer and paralegal will be compensated on an hourly basis predicated on a current billing rate of $450 per hour and $325 per hour, respectively, and the senior lawyers (if required) will be compensated on an hourly basis predicated on a current billing rate ranging from $450 per hour to $850 per hour. *See id.* The parties agree that all compensation and reimbursement due to, and other rights of Ms. Cyganowski and Assisting Personnel shall be treated and allowed as administrative expenses in accordance with section 503 of the Bankruptcy Code. *See id.*[22]

---

[22] The parties also agree that the Debtor's hiring and appointment of Ms. Cyganowski as the Sales Officer in accordance with this Settlement Agreement, as approved by the Bankruptcy Court, is subject to the following general limitations.

a. Ms. Cyganowski (and any agent and/or related entity) shall not act in any other capacity (for example, and without limitation, as a financial advisor, examiner, trustee, or investor/acquirer) in connection with the Chapter 11 Case.

b. Solely upon written consent of the Debtor, Bravo Luck and PAX and by written motion to the Bankruptcy Court upon notice, the Debtor may seek to (i) have Ms. Cyganowski assume duties that are different than the functions envisioned in the Settlement Agreement, (ii) materially change the terms of the engagement, (iii) modify the functions provided thereunder, (iv) add new executive officers, or (v) alter[] or expand[] the scope of the engagement.

c. No principal or employee associated with Ms. Cyganowski shall serve as a director of the Debtor during the pendency of the above-captioned case.

d. Ms. Cyganowski shall file or cause to be filed with the Bankruptcy Court and provide notice to parties having filed notices of appearance (the [U.S. Trustee], Bravo Luck, and PAX) in this Chapter 11 Case, reports of compensation earned and expenses incurred on a monthly basis.

e. Ms. Cyganowski, the Assisting Personnel and Otterbourg shall be entitled to advancement and indemnification by the Debtor's estate for all judgments, costs, and expenses, including reasonable legal fees (which shall be paid under the indemnity after court approval as they arise), arising from or related to any and all claims of whatsoever type brought against any of them in their capacity as [Sales Officer] or her agent, except for gross negligence, willful misconduct, fraud, or breach of fiduciary duty determined by a final order no longer subject to appeal. Nothing herein shall limit the immunity of Ms. Cyganowski, the Assisting Personnel or Otterbourg allowed by law or deprive any of them of indemnity for any act or omission for which they have immunity.

Settlement Agreement ¶ 27 D.

## The Operating Agreement and Resolution

As noted, the Debtor is a New York limited liability corporation. In part, the Debtor's

Operating Agreement provides:

> 9.3 <u>Officer</u>. The Members may, from time to time as they deem advisable, select
> one or more natural persons and designate them as officers of the Company (the
> "Officers") and assign titles (including, without limitation, President, Vice
> President, Secretary, and Treasurer) to any such person. The Members may, by
> written instrument, delegate to any Officer or any other agent of the Company any
> of the Members' powers under this. Agreement, including, without limitation, the
> power to bind the Company. **Any delegation pursuant to this Section 9.3 may
> be revoked at any time by the Members**. **An Officer may be removed with or
> without cause by the Members**. Any Officer may resign at any time by giving
> written notice to the Members. Any vacancy in any office, due to death,
> incapacity, resignation or removal, shall be filled by the Members. Officers may
> be Members or non-Members.

> 9.4 <u>Fiduciary Duty of the Members and Officers</u>. In exercising the powers granted
> by this Agreement and in performing the duties required by this Agreement with
> respect to the management and operation of the Company, each Member and
> Officer, pursuant to general principles of law, has a fiduciary duty to act
> reasonably in (or not opposed to) the best interests of the Company and the
> Members.

*See* Operating Agreement ¶¶ 9.3 (emphasis added), 9.4. In anticipation of entering into the

Settlement Agreement (and subject to this Court's approval of the Motions), the Debtor's

Member and Manager resolved to employ Ms. Cyganowski as the Sales Officer, and in doing so,

the Member modified the Operating Agreement[23] to waive his right under the agreement to

terminate or revoke the appointment of Ms. Cyganowski and agreed that she cannot be removed

by the Debtor or its Member or Manager without an Order of the Bankruptcy Court.[24]

---

[23]     Section 23 of the Operating Agreement states that the agreement "may be modified, altered, supplemented, or amended from time to time only upon the unanimous written consent of the Members." Operating Agreement ¶ 23.

[24]     The Resolution provides for, among other things, the approval and ratification of the Settlement Agreement as an exercise of the Debtor's business judgment and approves the appointment of Ms. Cyganowski pursuant to section 9.3 of the Operating Agreement. The key resolutions are as follows:

## Discussion

## Application of Bankruptcy Rule 9019

Pursuant to Bankruptcy Rule 9019(a), "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). As a general matter, "[s]ettlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re MF Global Inc*., No. 11–2790, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012); *see also Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (herein "*Iridium*") (stating that settlements are important in bankruptcy because they "help clear a path for the efficient administration of the bankrupt estate").

To approve a settlement under Bankruptcy Rule 9019, a court must determine that the settlement is fair, equitable, and in the best interests of the estate. *See Protective Comm. for*

---

RESOLVED, that in furtherance of the Settlement Agreement and in the exercise of its business judgment consistent with its fiduciary duties as a debtor-in-possession and the fiduciary standards set forth in Section 9.4 of the Operating Agreement, the Company hereby hires and appoints the Honorable Melanie L. Cyganowski (Ret.) (hereinafter "Judge Cyganowski") pursuant to Section 9.3 of the Operating Agreement as an employee to act as the Company's Sales Officer as provided in the Settlement Agreement;

RESOLVED, that Judge Cyganowski shall have only the duties and responsibilities set forth in the Settlement Agreement to control and oversee the sale of the Residence as defined under the Settlement Agreement;

RESOLVED, that Judge Cyganowski's employment and appointment by the Company as the Sales Officer remains subject to approval of the Bankruptcy Court; and

RESOLVED, the provisions of Section 9.3 of the Operating Agreement be and the same are hereby amended to ratify and confirm, consistent with the Settlement Agreement, that the appointment of Judge Cyganowski as Sales Officer cannot **be revoked or terminated, and Judge Cyganowski cannot be removed by the Company or its Member or Managers without an Order of the Bankruptcy Court.**

*See* Resolution at 1-2 (emphasis added).

*Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968); *see also Air Line Pilots Assoc. v. Am. Nat'l Bank & Trust Co. of Chi. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *In re Mrs. Weinberg's Kosher Foods, Inc.*, 278 B.R. 358, 361 (Bankr. S.D.N.Y. 2002). In so doing, the Court need not decide the numerous issues of law and fact raised by a compromise or settlement, "but must only 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.' " *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)). The Court need not "conduct a 'mini-trial' " but rather "only need be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment." *Adelphia*, 327 B.R. at 159.

The decision to approve or deny a particular settlement involving a bankruptcy estate lies within the discretion of the bankruptcy court. *See Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Nellis v. Shugrue*, 165 B.R. 115, 122–23 (S.D.N.Y. 1994). In evaluating the necessary facts, a court may rely on the opinion of the debtor, parties to the settlement, and the professionals. *See In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522–23 (S.D.N.Y. 1993). "While the bankruptcy court may consider the objections lodged by parties in interest, such objections are not controlling ... the bankruptcy court must still make informed and independent judgment." *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006).

In *Iridium*, the Second Circuit directs courts to balance seven interrelated factors in determining whether a settlement is fair and equitable (the "*Iridium* Factors"). *See Iridium*, 478 F.3d at 462. Those factors are:

1) the balance between the litigation's possibility of success and the settlement's future benefits;

2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;

3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";

4) whether other parties in interest support the settlement;

5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;

6) "the nature and breadth of releases to be obtained by officers and directors"; and

7) "the extent to which the settlement is the product of arm's length bargaining."

*See id.*

The sixth *Iridium* Factor is not relevant to this matter. The Settlement Agreement falls comfortably within the scope of the remaining factors. It is undisputed that the agreement is the product of extensive arms-length negotiations among competent and experienced counsel to the Debtor and its principal creditors – PAX and Bravo Luck. The agreement resolves the Stay Relief Motion and Conversion Motion, as well as confirms that PAX and Bravo Luck may proceed with the State Court Action and continue the BVI Litigation. That is clearly a benefit to the Debtor's estate and creditors as it spares the Debtor of the time, expense, and risk of litigating those matters.  Moreover, the agreement sets forth the process for marketing and selling the Residence that will be overseen by an "honest broker" who, although employed by the

Debtor, will function free from the Debtor's oversight. Finally, the Debtor's creditors, including

The Sherry Netherland, support the settlement. The Court finds that the Settlement Agreement is

fair and equitable and is in the best interests of the Debtor's estate and creditors.

## Retention of Sales Officer

Generally, debtors in possession may employ attorneys, accountants, appraisers,

auctioneers, and other professionals after obtaining court approval. *See* 11 U.S.C. §§ 327(a),

1107. Upon receipt of such court approval, those professionals are entitled to reasonable

compensation and reimbursement for actual expenses on account of the services they provide

after parties in interest have received notice and have had an opportunity to be heard. *See* 11

U.S.C. § 330(a)(1). Under certain circumstances, courts have permitted the retention of

professionals under sections 363(b) and 105(a) of the Bankruptcy Code. Section 105(a) allows a

court to issue an order that is necessary to advance the provisions of the Bankruptcy Code.[25]

Section 363(b) permits the trustee or debtor in possession to, after notice and a hearing, "use,

sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. §

363(b)(1). Pursuant to section 363(b), a debtor can retain a management consultancy or similar

firm to provide personnel to fill key officer roles of the debtor and manage the debtor's day-to-

day business. *See, e.g., In re K.G. IM, LLC*, 620 B.R. 469, 478 (Bankr. S.D.N.Y. 2020)

---

[25]    Section 105(a) states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out
> the provisions of this title. No provision of this title providing for the raising of an issue by a party
> in interest shall be construed to preclude the court from, sua sponte, taking any action or making
> any determination necessary or appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

11 U.S.C. § 105(a).

(authorizing retention of management consulting firm to perform "crisis management services" and to provide a chief restructuring officer); *In re Nine West Holdings, Inc.,* 588 B.R. 678 (Bankr. S.D.N.Y. 2018) (approving retention of management consulting firm to provide interim chief executive officer and certain additional personnel) ("*Nine West Holdings*"); *In re Toisa Limited*, No. 17-10184 (Bankr. S.D.N.Y. Jan. 22, 2018) [Dkt. No. 458] (approving employment of management consulting firm to provide chief restructuring officer); *In re Enron Corp.*, No. 01-16034, 2006 WL 1030421, at *2 (Bankr. S.D.N.Y. Apr. 12, 2006) (noting that court authorized the debtors, under section 363(b), to retain a management consulting firm to provide a chief executive and chief restructuring officer and additional individuals to serve as additional personnel during the chapter 11 cases). However, where the role that a debtor seeks to fill is a creature of state law, the debtor also must satisfy applicable state corporation law and state limited liability company acts. "The Bankruptcy Code does not authorize the bankruptcy court to fill [those] positions, or to bypass the procedures that the state statutes mandate." *In re 1031 Tax Group, LLC*, No. 07-11448 (MG), 2007 WL 2085384, at *3 (Bankr. S.D.N.Y. July 17, 2007) ("*1031 Tax Group*").

The position of "Sales Officer" is a "creature of state law" as it arises under the Debtor's Operating Agreement and the New York Limited Liability Law. Paragraph 9.3 of the Operating Agreement states, in part, that

> The Members may, from time to time as they deem advisable, select one or more natural persons and designate them as officers of the Company (the "Officers") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. The Members may, by written instrument, delegate to any Officer or any other agent of the Company any of the Members' powers under this. Agreement, including, without limitation, the power to bind the Company. Any delegation pursuant to this Section 9.3 may be revoked at any time by the Members. An Officer may be removed with or without cause by the Members.

Operating Agreement ¶ 9.3. The agreement also provides that it "may be modified, altered, supplemented or amended from time to time only upon the unanimous written consent of the Members." *Id.* ¶ 23. As evidenced by the Resolution (*supra*. n. 24), in creating the position of the Sales Officer, the Debtor, with the written consent of Mr. Kwok, its sole Member, amended the Operating Agreement to waive the Members' right to revoke the delegation of authority to the Sales Officer under the Engagement Letter and Settlement Agreement. There is no dispute that the Debtor has the authority under the Operating Agreement, as amended, and New York state law to employ the Sales Officer.[26]

---

[26]    Section 202 of the New York Limited Liability Company Law provides that:

> Unless the articles of organization provide otherwise and subject to any limitations provided in this chapter or any other law of this state, a limited liability company may:
>
> > (h) elect or appoint managers, employees and agents of the limited liability company, define their duties and fix their compensation;
> >
> > (j) make and alter its operating agreement, not inconsistent with its articles of organization or with the laws of this state, concerning the business of the limited liability company and the conduct of its affairs;
> >
> > (q) have and exercise all powers, in addition to those set forth in subdivisions (a) through (p) of this section, not inconsistent with law, necessary or convenient to effect any or all of the purposes for which the limited liability company is formed. In order for a limited liability company to exercise the powers enumerated in this chapter, it is not necessary to set forth such powers in the articles of organization.

NY LLC L §§ 202 (h), (j), (q). Furthermore, section 417 of the New York Limited Liability Company Law provides, in part, that the members of a limited liability company:

> shall adopt a written operating agreement that contains any provisions not inconsistent with law or its articles of organization relating to (i) the business of the limited liability company, (ii) the conduct of its affairs and (iii) the rights, powers, preferences, limitations or responsibilities of its members, managers, employees or agents, as the case may be.

NY LLC L § 417(a). "The operating agreement is, therefore, the primary document defining the rights of members, the duties of managers and the financial arrangements of the limited liability company[.]" *Goldsein v. Pikus*, 2015 N.Y. Misc. LEXIS 2849, *28, 2015 NY Slip Op 31455[U], 25 (Sup. Ct., New York County 2015) (internal citation omitted) (quoting *Willoughby Rehabilitation and Health Care Ctr., LLC v. Webster*, 831 N.Y.S.2d 357 (Sup. Ct., Nassau County 2006), *aff'd*, 849 N.Y.S.2d 887 (2d Dep't 2007)) (holding that "as under the terms of the Operating Agreement, the Managers expressly delegated their authority to manage the Property to [management company] alone (Operating Agreement § 5.2), plaintiffs also are entitled to a declaration that [management company], and not

The U.S. Trustee does not challenge the substance of the Settlement Agreement, that the agreement is "fair and equitable" or that the relief called for under the agreement is in the best interests of the Debtor, its estate, and creditors. However, he contends that there is no authority under the Bankruptcy Code to appoint a Sales Officer as contemplated under the Engagement Letter and Settlement Agreement. The U.S. Trustee asserts that "the longstanding conflict between the Debtor and PAX has clearly risen to such a level that the latter does not believe that the former can act as a fiduciary for the creditors." U.S. Trustee Supplement at 8. He maintains that in an effort to resolve that conflict, in the Settlement Agreement, PAX agrees not to object to the Debtor remaining in possession of its assets, provided that the Sales Officer supplants the Debtor with respect to all matters relating to the marketing and sale of the Residence. *See id.* at 9. The U.S. Trustee asserts that the solution is "unworkable." *Id.* at 10.

As Judge Glenn noted in *In re 1031 Tax Group, LLC*:

> To obtain court approval to use property under § 363(b), the Debtors must show a legitimate business justification for the proposed action. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir.1983) (noting that a debtor much show "some articulated business justification" for using property outside the ordinary course of business under section 363(b)); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D.Del.1991) (noting that the Third Circuit has adopted "sound business purpose" test for § 363(b)). If a valid business justification exists, the law vests a debtor's decision to use property out of the ordinary course of business with a "strong presumption" that corporate business decisions are made on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y.1992) (citing *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del.1985)). Accordingly, courts are "loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence." *Id.*

*1031 Tax Group,* 2007 WL 2085384, at *5.

---

[defendant manager], has the authority to manage the Property under the Operating Agreement[]"). There is no dispute that the Operating Agreement, as amended, governs the rights of the Debtor's Members.

The Debtor contends the retention of the Sales Officer is based on a sound exercise of its business judgment as it provides an experienced and independent party to further facilitate the efficient and necessary sale of the Debtor's primary asset. *See* Sales Officer Motion ¶ 22. It contends that it has satisfied the requirements of section 363(b) and the retention of the Sales Officer is appropriate. It describes the role of the Sales Officer as one of a Chief Restructuring Officer, with defined functions. The U.S. Trustee contends that appointment is permitted under section 363(b) of the Bankruptcy Code, but "only under certain circumstances" and where the J. Alix Protocol (the "Protocol") is satisfied. *See* U.S. Trustee Supplement at 14-15. The U.S. Trustee argues that the Debtor improperly seeks two modifications to the Protocol: (i) the Sales Officer is assuming the role of an *in rem* receiver of the Debtor's primary asset and thus violates the Bankruptcy Code; and (ii) the proposed retention violates the Protocol's "one hat" rule. He also argues that the Sales Officer will not be accountable to the Debtor and its members, but ultimately the Court.  *See id.* at 14; *see also* U.S. Trustee Reply at 5. The Court considers those matters below.

The U.S. Trustee contends that the duties and responsibilities of the Sales Officer under the Settlement Agreement are akin to those imposed on a state court *in rem* receiver charged with the responsibility of preserving an asset pending the disposition of such asset. He maintains that the substance of the Debtor's Resolution is clear that the Sales Officer is a *de facto* receiver of the Residence – the Debtor's primary asset – and such appointment is prohibited by section 105(b) of the Bankruptcy Code. *See id.* at 10 (contending that "the duties and functions to be performed by the [Sales Officer] are similar—if not identical—to the duties and function of a receiver appointed by a state court."). He contends that there is no authority under the Bankruptcy Code for a Debtor to relinquish its fiduciary duty to oversee the sale of its principal

asset in favor of a third party that is not a chapter 11 trustee or an examiner. *See id.* at 18-19. *See also* U.S. Trustee Reply at 9-10.

Under the New York Limited Liability Company Act, a court may not appoint a receiver for a limited liability company except post-dissolution of the company in connection with winding up its affair. *See* NY LLC L § 3. *See also At the Airport v. ISATA, LLC*, 18 Misc.3d 1106A, 856 N.Y.S.2d 22 (Sup. Ct., Nassau County 2007) ("The court may appoint a receiver for a limited liability company only in connection with the winding up of its affairs.") (citing NY LLC L § 3). The Debtor is not in dissolution and is not winding-up its affairs. It has not sought the appointment of a receiver. There is no basis for equating the Sales Officer's role to that of a receiver under state law.

The Bankruptcy Code bars the court from appointing a receiver. *See* 11 U.S.C. § 105(b) ("Notwithstanding [section 105(a)], a court may not appoint a receiver in a case under [title 11]."). *See also In re 400 Madison Avenue Ltd. P'ship*, 213 B.R. 888, 894 (Bankr. S.D.N.Y. 1997) ("Under the Bankruptcy Code, the bankruptcy court is expressly prohibited from appointing a receiver, *see* Code § 105(b), although the bankruptcy court can continue a prepetition receiver's appointment under Code § 543(d)(1).") (footnote omitted). However, that is not what the Debtor seeks to do under the Settlement Agreement. A receiver is a

> person appointed by a court for the purpose of preserving property of a debtor pending an action against him . . . whenever there is danger that, in the absence of such appointment, the property will be lost, removed or injured.

*In re 400 Madison Avenue Ltd. P'ship*, 213 B.R. at 894 n.14 (quoting Black's Law Dictionary (6th ed.1990)). The Settlement Agreement does not call for the Sales Officer to take possession of or preserve the Residence or the proceeds from the sale of the Residence. The agreement provides for the Sales Officer "solely to control and oversee the sale of the Residence as

provided [in the Settlement Agreement] and without subjecting [Ms.] Cyganowski to any other

duties or responsibilities." Settlement Agreement ¶ 2. It states generally that the gross proceeds

from the sale of the Residence will be deposited in an escrow account "subject to release solely

with Bankruptcy Court approval on prior notice, including prior notice to Bravo Luck and PAX."

*Id.* ¶ 5c. It also provides that Ms. Cyganowski "shall have no control over, or obligations with

regard to, the gross proceeds of the sale or the escrow account[.]" *Id.* The Engagement Letter

also clearly limits Ms. Cyganowski's duties to matters relating to the sale of the Debtor's interest

in the Residence, as follows:

<u>Description of Services</u>

- In connection with this engagement, I will serve as the Sales Officer on behalf of the Company's bankruptcy estate with respect to the proposed sale (the "Proposed Sale") of the Company's ownership interest in … [the Residence].

- As Sales Officer, I will have the powers and duties set forth in the Proposed Settlement (as approved by the Court), including, but not limited to, overseeing the Proposed Sale of the Residence, which shall be conducted through a conventional bankruptcy-type sale process. If all parties agree, the Sales Officer can also provide mediation services to the parties pursuant to a separate engagement letter.

<u>Limitation of Duties</u>

- Neither I, nor Otterbourg make any representation or guarantee of the amount of sale proceeds, if any, that could be or will be generated from the sale of the Residence.

- Neither I, nor Otterbourg shall be responsible, obligated or liable for the payment of any taxes, fees, costs, expenses, maintenance or charges related to the Residence, and such taxes fees, costs, expenses, maintenance or charge shall be solely he reasonability, obligation and liability of the [Debtor's] bankruptcy estate.

Engagement Letter at 1-2.

Contrary to the U.S. Trustee's assertion, the Debtor is not attempting to use section

105(a) to circumvent the limitations in section 105(b). The Sales Officer is not akin to state court

*in rem* receiver. The Court overrules that aspect of the U.S. Trustee's objection to the Sales Officer Motion and the Settlement Motion.

The J. Alix Protocol was designed to resolve the U.S. Trustee's objections to debtors' applications to retain officers (*e.g.*, chief restructuring officers) and their firms where the officer had served in the role prior to the bankruptcy filing. *See In re McDermott Int'l, Inc.*, 614 B.R. 244, 249 (Bankr. S.D. Tex. 2020) (citing *In re Safety-Kleen Corp.*, Case No. 00-2303, Docket Nos. 2825, 2920 (Bankr. D. Del. 2000)); *see also In re K.G. IM, LLC*, 620 B.R. at 486 (noting the U.S. Trustee represented the Protocol as framework permitting the continued post-petition employment of a firm that had been employed with the debtor prepetition.). The core requirements of the Protocol include the following:

> (a) the firm sought to be retained must serve in only one capacity (*i.e.*, as either a financial advisor, crisis manager, claims agent, or investor);
>
> (b) the firm's retention application must be filed under section 363 of the Bankruptcy Code and the application must disclose the firm's relationships with interested parties and make other disclosures showing the firm is otherwise disinterested;
>
> (c) the firm must file monthly staffing reports, which must be subject to Court review; and
>
> (d) retention of persons furnished by the firm must be approved by and act under the direction of an independent board of directors.

*Nine West Holdings*, 588 B.R. at 688.

The Protocol "is not a provision of the Bankruptcy Code. It is not law, and it is not binding on this Court or any other court." *Id.* at 687-88. It is also not applicable to the Motions. Neither Ms. Cyganowski nor Otterbourg was employed by the Debtor prior to the commencement of the Chapter 11 Case. Neither holds any connection to any interested party in this case. *See* Declaration Of Disinterestedness By Melanie L. Cyganowski ¶¶ 9-13 [ECF No.

73]. That is plainly not a bar to Ms. Cyganowski's retention as the Sales Officer. Moreover, the Debtor does not seek to retain Otterbourg, it seeks an order of the Court authorizing Ms. Cyganowski's retention as Sales Officer pursuant to the terms of the Engagement Letter and Settlement Agreement. This falls outside of the scope of the Protocol. Accordingly, the Court finds no merit to the U.S. Trustee's contention that the Motions fail to the extent that the relief sought therein violates the Protocol's "one hat" rule. Nonetheless, as discussed below, the Debtor has not demonstrated grounds under section 363(b) for the Sales Officer to utilize the services of the Assisting Personnel from Otterbourg or for Ms. Cyganowski to provide legal services to the Debtor.

The Debtor likens the Sales Officer to a Chief Restructuring Officer with specific, limited duties. However, Ms. Cyganowski is not assuming the duties of a Chief Restructuring Officer. The Debtor does not operate a business to restructure and has neither revenue nor employees. Its loosely developed exit strategy for the case is to sell the Residence and distribute the proceeds after the New York state court resolves the issue relating to the ownership of the asset. *See* Rule 1007 Decl. ¶ 10. The Debtor commenced this case to stay the State Court Litigation while it negotiated with its principal creditors a process by which they could maximize the value of the Residence for the benefit of the Debtor's creditors and equity holders. The Debtor's employment of Ms. Cyganowski as its Sales Officer is the key to the solution that the Debtor, through Mr. Kwok, its sole Member, has negotiated with its creditors. The litigation will proceed in state court while Ms. Cyganowski will manage the Sale Process. The Debtor and its Member have delegated control over that process to Ms. Cyganowski. As previously discussed, section 9.3 of the Operating Agreement allows the Member to designate officers and delegate any of the Member's authority under the Operating Agreement to that officer, including the power to bind

the Debtor. In part, section 23 of the Operating Agreement provides that the Operating Agreement "may be modified, altered, supplemented or amended from time to time only upon the unanimous written consent of the Members." That is what happened here. The Member resolved to approve the Settlement Agreement, amend the Operating Agreement, and retain Ms. Cyganowski as the Debtor's employee to serve as its Sales Officer with all of the responsibilities and powers detailed in the Engagement Letter and Settlement Agreement.  With the express written consent of Mr. Kwok, the sole Member, the Debtor amended the Operating Agreement to limit the Debtor's ability to remove or terminate Ms. Cyganowski as Sales Officer, or revoke her powers, which removal, termination or revocation can only occur subject to this Court's approval. Post-petition, the Debtor's state law governance rights persist "and neither [State] law nor the Bankruptcy Code gives the [U.S. Trustee] special rights to block the exercise or transfer of governance rights in the absence of appointment of a chapter 11 trustee." *In re K.G. IM, LLC*, 620 B.R. at 482. In this circuit, it is well settled that a debtor's corporate governance rights are unaffected by a chapter 11 filing. In *In re Johns-Manville Corp.*, 801 F.2d 60, 63 (2d Cir. 1980), the court held that a chapter 11 proceeding did not preclude the right of shareholders to compel a meeting for the purpose of electing a new board of directors. In interpreting that decision, Judge Glenn found that "[t]he [Second] circuit noted that the shareholders' right to govern their corporation is a 'prerogative ordinarily uncompromised by reorganization' and that the 'law of [the Second] circuit directs that the shareholders' natural wish to participate in this matter of corporate governance be respected.'" *K.G. IM, LLC*, 620 B.R. at 482 (quoting *In re Johns-Manville Corp.*, 801 F.2d at 64).  Accordingly, the Debtor's rights under New York State law and the Operating Agreement to alter its management structure post-petition is an appropriate exercise of its corporate governance rights and permissible under the Bankruptcy Code.

Finally, the Court finds no merit to the U.S. Trustee's contention that under the Settlement Agreement, the Sales Officer ultimately will be accountable to the Court, not to the Debtor and its Members. The U.S. Trustee argues that because the Debtor has agreed to surrender its authority over the Sale Process and the Sales Officer, the Sales Officer is not accountable to the Debtor. *See* U.S. Trustee Supplement at 15. He maintains that because the Settlement Agreement calls upon the Court to resolve a motion by the Debtor to remove the Sales Officer, the Court is being asked to step into the role of the ultimate manager of the Debtor. *See id.* However, the Debtor's right to seek to terminate or revoke the Sales Officer's appointment will flow from the terms for the Operating Agreement. An action to terminate the appointment is outside the ordinary course of the Debtor's business. As such, it must be subject to court approval under section 363(c) of the Bankruptcy Code. In resolving such a motion, the court will be required to determine whether the Debtor is properly exercising its business judgment. *See, e.g., In re Lionel Corp.,* 722 F.2d 1063 (2d Cir. 1983) (applying business judgement standard to proposed sale of debtor's assets); *In re Borders Grp., Inc*., 453 B.R. 477 (Bankr. S.D.N.Y. 2011) (applying business judgment standard to sale of assets of de minimis value.).

The Court agrees with the Debtor that a valid business justification exists for approving the retention of the Sales Officer. *See* Sales Officer Motion ¶ 22 ("The decision to retain Judge Cyganowski with the consent of the Debtor's major creditors, should be authorized because it is based on a sound exercise of the Debtor's business judgment and adds an experienced an independent leader for the sale process. Indeed, Judge Cyganowski's engagement provides assurances that ongoing disputes between the Debtor, Bravo Luck and PAX will not encroach upon the sale of the Residence."). The Debtor is unable to reach a settlement with its principal

creditors without the retention of the Sales Officer. The Court finds that under the unique facts of this case, where the Debtor is not operating a business and it's exit strategy is predicated on the sale of the asset, and that sale cannot be achieved without the services of the Sales Officer, there is a valid business justification for the appointment of the Sales Officer to oversee the Sale Process. As noted previously, during the hearings on the Motions, the Debtor clarified that (although not stated in the Engagement Letter or the Settlement Agreement), it expects that Ms. Cyganowski (with the Assisting Personnel from Otterbourg) will act in the dual capacity as the Debtor's legal advisor on sale-related matters and the Sales Officer who will oversee the Sale Process. Although the Debtor has demonstrated grounds under sections 105(a) and 363(b) for employing Ms. Cyganowski as its Sales Officer for purposes of overseeing the Sale Process, there are no grounds under section 363(b) for including Otterbourg within the scope of Ms. Cyganaowki's employment, or to expand her duties to include serving as the Debtor's legal advisor on sale-related matters. If the Debtor wishes to retain Otterbourg as counsel, it must do so pursuant to section 327 of the Bankruptcy Code. For that reason, the Court denies the Debtor's request to retain Ms. Cyganowski as its Sales Officer.

### Conclusion

Based on the foregoing, the Court denies the Motions.

IT IS SO ORDERED.

Dated: September 1, 2021
New York, New York

/s/ *James L. Garrity, Jr.*

Honorable James L. Garrity, Jr.
United States Bankruptcy Judge