TROUTMAN PEPPER
HAMILTON SANDERS LLP
Francis J. Lawall
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Telephone: (215) 981-4000
Facsimile:  (215) 981-4750
francis.lawall@troutman.com

*Counsel for Bravo Luck Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Genever Holdings LLC, | Case No. 20-12411 (JLG) |
| Debtor. | **Re: ECF No. 211** |

**OBJECTION OF BRAVO LUCK LIMITED TO
JOINT MOTION OF (A) GENEVER HOLDINGS LLC AND
(B) LUC A. DESPINS AS CHAPTER 11 TRUSTEE FOR ESTATE OF HO WAN KWOK
TO TRANSFER, PURSUANT TO 28 U.S.C. §§ 1408 AND 1412 AND BANKRUPTCY
RULE 1014(a), VENUE OF CHAPTER 11 CASE OF GENEVER HOLDINGS LLC
TO BANKRUPTCY COURT FOR DISTRICT OF CONNECTICUT**

Bravo Luck Limited ("Bravo Luck"), by and through its counsel, hereby objects (this "Objection")[1] to the *Joint Motion of (A) Genever Holdings LLC and (B) Luc A. Despins as Chapter 11 Trustee for Estate of Ho Wan Kwok to Transfer, Pursuant to 28 U.S.C. §§ 1408 and 1412 and Bankruptcy Rule 1014(a), Venue of Chapter 11 Case of Genever Holdings LLC to Bankruptcy Court for District of Connecticut* (ECF No. 211) (the "Motion")[2] filed by Genever

---

[1] By filing this Objection, Bravo Luck does not submit to general bankruptcy or United States jurisdiction. This Objection is only to be construed as a limited appearance of Bravo Luck necessitated by the Motion's potential effect on Bravo Luck and in order for Bravo Luck to protect its rights as a major party-in-interest in this bankruptcy case.  Bravo Luck does not waive, and specifically preserves, all of its procedural and substantive defenses to any claims that may be asserted against Bravo Luck by any party in this case.

[2] Capitalized terms used but not defined herein shall be ascribed the definitions provided to them in the Motion.

131074792

Holdings LLC (the "Debtor" or "Genever (US)") and Luc A. Despins (the "Trustee" and, together with the Debtor, the "Movants").  In support of this Objection, Bravo Luck respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Motion to transfer venue of the Genever (US) Case—which has been pending before this Court for two years—is replete with conjecture and innuendo of unfounded and unproven allegations of the ownership structure of Bravo Luck and the Debtor.  The Movants also attempt to influence this Court's perception of Bravo Luck and its sole shareholder, Qiang Guo, by interjecting wholly unrelated litigation related to the *Lady May*.  The *Lady May*, its ownership structure, and its involvement in the Individual Debtor Case have nothing to do with the Genever (US) Case, and certainly nothing to do with Bravo Luck's ultimate equitable ownership of the Sherry-Netherland Apartment, which is located in Manhattan, not Connecticut.

2. The Trustee suggests that the bar date notice in the Genever US Case not being sent to the Individual Debtor's alleged creditors is also a reason to change venue.  This is just one of the many red herring arguments made by the Trustee, who ignores the fact that Genever (US) is a second tier downstream subsidiary of a holding company whose ownership remains in dispute.  There is no reason to assume, nor has it been proven, that the Individual Debtor's creditors are creditors of Genever (US).  None of the Individual Debtor's creditors, other than PAX, hold judgments against the Individual Debtor, let alone Genever (US).  Moreover, PAX itself does not hold a judgment against Genever (US) and likely does not hold any claim against Genever (US) whatsoever.

3. The ownership dispute (the "Ownership Dispute")—whereby (i) Bravo Luck assets that it is the beneficial owner of the Sherry-Netherland Apartment inasmuch as the shares of Genever (US) and Genever Holdings Corporation and any assets held in their names ("Genever BVI" collectively with Genever (US), the "Genever Entities") were merely held in trust

-2-
131074792

by the Individual Debtor[3] for Bravo Luck's benefit; and (ii) PAX asserts that the Individual Debtor is the owner of the Genever Entities, which are mere alter egos of the Individual Debtor—is on track to be resolved through the litigation[4] currently pending in the Eastern Caribbean Supreme Court, Virgin Islands, In the High Court of Justice, Commercial Division at Index. No. BVIHCM2020/0137 (the "BVI Litigation"). The BVI litigation was commenced by PAX, whose interests appear wholly aligned with that of the Trustee. Bravo Luck contends that the parties to the Genever Settlement Agreement, approved after months of litigation before this Court, effectively determined that the Ownership Dispute would go forward and be resolved in the British Virgin Islands (the "BVI") and, therefore, cannot and should not now, after two years, form the basis for transferring venue to the Connecticut Bankruptcy Court where the Individual Debtor Case is being administered.

4.     Furthermore, on October 11, 2022, the Debtor commenced an adversary proceeding against Bravo Luck in this Court seeking to invalidate the Trust Agreement and, alternatively, asserting a fraudulent transfer claim against Bravo Luck (*i.e.*, the adversary proceeding implicates the Ownership Dispute). *See* ECF No. 214; Adv. Pro. No. 22-01157 (JLG) (ECF. No. 1) (the "Genever (US) Complaint"). The commencement of this action in this Court directly contravenes the understanding of the parties to the Genever Settlement Agreement—which included the Debtor—that the Ownership Dispute was to be decided outside of a bankruptcy court. Therefore, the Debtor (and by virtue of directing the Debtor's actions, the Trustee) has directly teed up a dispute over the intention of the Genever Settlement Agreement and its effect on

---

[3] It is Bravo Luck's position that the Trustee merely stepped into the Individual Debtor's shoes and, thus, is also holding the Genever Entities' shares in trust for Bravo Luck's benefit.

[4] Some related alter ego claims of PAX against the Individual Debtor and the Genever Entities are pending in the Supreme Court, New York County (the "New York Supreme Court") at Index No. 652077/2017 (the "New York Action").

131074792

what forum may hear the Ownership Dispute. Because this Court is in the best position to interpret its own Settlement Order and the Genever Settlement Agreement, the Motion to transfer venue should be denied—certainly, at least until this dispute as to the appropriate forum for the Ownership Dispute is heard and determined.

5. The Genever (US) Case has proceeded in an orderly and efficient manner with a minimum of unnecessary administrative costs. If this case is moved to the Connecticut Bankruptcy Court and tangled up in what appears to be blood sport between the Trustee and the Individual Debtor, the cost and delay of resolving what is a discrete issue will be overwhelming and detrimental to all involved.

6. As outlined in detail below, judicial economy and administrative efficiency—the primary factors for determining both the interests of justice and convenience of the parties—are better served by allowing the Genever (US) Case to proceed before this Court. This is particularly so because this Court is the most appropriate and efficient venue to resolve disputes concerning the interpretation of its Settlement Order, which based on the Movants' position as set forth in the Motion and evidenced by the Genever (US) Complaint against Bravo Luck, is a central issue between the Debtor and Bravo Luck.

**OBJECTION**

I. **Transfer of the Venue of the Debtor's Bankruptcy Case is Not in the Interest of Justice or for the Convenience of the Parties.**

7. Section 1412[5] of title 28 of the United States Code provides discretion to this Court to decide to transfer this case to another district, but even if some factors weigh in favor of a transfer "in the interest of justice or for the convenience of the parties," by the plain language of section 1412, the Court is not *required* to transfer venue. Furthermore, the Movants have the

---

[5] "A district court *may* transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412 (emphasis added).

burden of establishing, by a preponderance of the evidence, that the case warrants transfer to a new venue.[6] *See, e.g., In re Enron Corp.,* 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002). Ultimately, whether venue of a bankruptcy case should be transferred is a fact-intensive, case-by-case determination, which "is not to be taken lightly." *Id*. (*citing Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1241 (5th Cir. 1979) ("CORCO") ("the court should exercise its power to transfer cautiously"); *In re Pavilion Place Associates*, 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988) ("Transfer is a cumbersome disruption of the Chapter 11 process.")); *see also In re Kona Joint Venture I, Ltd.*, 62 B.R. 169, 172 (Bankr. D. Haw. 1986) ("The resolution of an issue of venue is left to the sound discretion of the trial court based on its understanding of the requirements of the particular case in the context of Chapter 11 reorganization, but the power of the court to transfer venue should be exercised cautiously.") (internal citations omitted) (*citing In re Dahlquist*, 34 B.R. 476, 485 (Bankr. D.S.D. 1983) *and In re Island Club Marina, Ltd.*, 26 B.R. 505, 507 (Bankr. D. Haw. 1981)).

8. The Movants correctly outline the factors to be balanced in consideration of a motion to transfer venue either in the interest of justice or for the convenience of the parties, *see* Motion, ¶¶ 12, 43, however, such factors clearly weigh in favor of not transferring the Genever (US) Case to the Connecticut Bankruptcy Court—especially in light of case law that overwhelmingly guides courts to exercise venue transfer with caution. *See supra*, ¶ 7.

### A. Transfer of this Case is Not in the Interest of Justice.

9. When evaluating whether a transfer of venue would be in the interest of justice, courts consider the following factors:

---

[6] The Movants make a conclusory allegation that "Connecticut is a proper venue for the Genever (US) Case under 28 U.S.C. § 1408 because the Individual Debtor is an affiliate of Genever (US)." Motion, ¶ 31. The Movants must establish that Genever (US) is an "affiliate" of the Individual Debtor as that term is defined in the Bankruptcy Code. The Motion entirely fails to address or support this issue; therefore, nothing in this Objection should be construed as a waiver of any potential objection by Bravo Luck to the argument that the Individual Debtor and Genever (US) are "affiliates."

131074792

    (1) whether transfer would promote the economic and efficient administration of the bankruptcy estate;
    (2) whether the interests of judicial economy would be served by the transfer;
    (3) whether the parties would be able to receive a fair trial in each of the possible venues;
    (4) whether either forum has an interest in having the controversy decided within its borders;
    (5) whether the enforceability of any judgment would be affected by the transfer; and
    (6) whether the plaintiffs original choice of forum should be disturbed.

*In re Dunmore Homes, Inc.*, 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008) (*citing In re Enron Corp.*, 317 B.R. at 638-39). Additionally, "courts consider the ability of interested parties to participate in the proceedings and the additional costs that might be incurred to do so." *Id*.

    *i. Economic and Efficient Administration and Judicial Economy*

   10. The Movants argue that there is overlap between the Genever (US) Case and the Individual Debtor Case that necessitate coordination in one forum. This argument, which is based entirely upon supposition, ignores the fact that the Genever (US) Case has been pending for more than two years, is well underway in the sale of its Manhattan property by a New York-based Sales Officer who was appointed by this Court along with a New York-based real estate broker. The current proposed chapter 11 plan (ECF No 206)[7] does nothing more than carry forth the Genever Settlement Agreement and provide for a mechanism to complete litigation of the Ownership Dispute in a forum chosen by the Individual Debtor's largest (and possibly only) creditor—a forum that all relevant parties were on board with until appointment of the Trustee. The more efficient and economical approach is to allow the Genever (US) Case to proceed to conclusion in this Court through confirmation of a chapter 11 plan.

---

[7] Bravo Luck is the proponent of the chapter 11 plan currently pending in the Genever (US) Case, however, this plan largely mirrors the chapter 11 plan previously proposed by the Debtor (ECF No. 164).

-6-

131074792

11. Most significantly, the Movants argue that, unless the Genever (US) Case is transferred to the Connecticut Bankruptcy Court, the ownership disputes and characterization of the Individual Debtor's ownership in certain assets, namely the Sherry-Netherland Apartment that Bravo Luck contends is its property, will need to be decided in multiple forums,[8] leading to the potential for conflicting judgments and issues with creditor notice and distributions. This is simply untrue and the Movants' proposed approach, including transfer of the Genever (US) Case, would actually result in a far less economical and efficient administration of this case for all of the courts and parties involved. Rather, the more economical and efficient manner to proceed is to deny the Motion, keep the Genever (US) Case in this Court, and allow the BVI Litigation to proceed to a final ruling on the Ownership Dispute as was originally contemplated between the parties—including Genever (US)—to the Genever Settlement Agreement.

12. There are two gating issues that further demonstrate why denial of venue transfer is the more efficient way to proceed (which, again, is the factor weighed most heavily in the "interest of justice" consideration). First, there is a dispute related to the Genever Settlement Agreement. The Movants assert that "[n]othing in the Genever Settlement Agreement specifies in what forum or venue substantive disputes related to the Sherry-Netherland Apartment have to be resolved[,]" and that nothing in the Genever Settlement Agreement precludes the parties' rights from proceeding outside of the BVI or New York state court. *See* Motion, ¶¶ 51-53. The Movants, however, are misrepresenting the context and understanding of the parties to the Genever Settlement Agreement—likely the result of the Trustee not being involved in this case at that time.

13. Section 7(b) of the Genever Settlement Agreement, in its entirety, provides:

---

[8] The Trustee manufactured this issue by filing the Genever (US) Complaint against Bravo Luck on October 11, 2022, and filing, on the same day, a complaint against Bravo Luck and Qiang Guo on substantially similar bases in the Individual Debtor Case in the Connecticut Bankruptcy Case. *See* Adv. Pro. No. 22-05027 (JAM), Connecticut Bankruptcy Court.

> Nothing herein shall prejudice the rights of any party, including Bravo Luck and PAX to proceed with the BVI Litigation, provided that PAX, Bravo Luck, Kwok, Guo or any of his or its affiliates reserve the right to assert claims in the Bankruptcy Court relating to its status as a creditor of the Debtor, and PAX reserves all rights to oppose such claims on any grounds. In addition, notwithstanding anything contained herein to the contrary, nothing in this Agreement shall prejudice the rights of any Party, including Bravo Luck and PAX, from proceeding with any and all claims, if any, against anyone, including Bravo Luck, Kwok, Guo, or any of his or its affiliates, and PAX or any of its affiliates, in BVI, State Court, or otherwise, and Bravo Luck and PAX reserve all rights to oppose such claims in the applicable forum.

Genever Settlement Agreement, ¶ 7(b). As a "Party" to the Genever Settlement Agreement along with the Debtor and PAX, Bravo Luck's understanding of the settlement, including the first sentence of section 7(b), is that the Ownership Dispute related to the Genever Entities and the Sherry-Netherland Apartment would be decided in the BVI, where PAX commenced suit. Moreover, the second sentence of the section 7(b) was intended to not limit any *other claims* that any "Party" (defined in the Genever Settlement Agreement as the Debtor, PAX, and Bravo Luck) may have against anyone to any particular forum. Prior to appointment of the Trustee, it was clear that the foregoing was the Parties' intent with respect to the Genever Settlement Agreement, *i.e.*, the overarching concept underlying the Genever Settlement Agreement was that the Ownership Dispute would be heard in a non-bankruptcy court forum but any other disputes between the Parties could be brought in or outside of this Court, with all Parties' rights reserved to object to the forum. *See*, *e.g.*, *Debtor's Amended Motion to Approve Attached Stipulation of Settlement with Bravo Luck and PAX* (ECF No. 62, ¶¶ 3-4) ("The Settlement is principally designed to enable the Debtor to proceed with a sale of the Residence while the Litigation Disputes continue to be adjudicated[,]"; where "Litigation Disputes" is defined as "Prior to the commencement of the Chapter 11 case, disputes existed in NYS court and in BVI involving, among others,[] the Debtor, the Debtor's BVI parent company, PAX and Bravo Luck[.]"); *id.*, ¶ 9 ("The Settlement also contemplates that adjudication of the Litigation Disputes will continue pending the sale process."); *Debtor's*

-8-

*Liquidating Plan of Reorganization* (ECF No. 164) ("It is contemplated that the Ownership Dispute will be determined outside of the Bankruptcy Court, unless Bravo Luck's alternate contention that it retains a monetary claim against the Debtor is not determined in the BVI Action on the merits.").

14. Because this Court approved the Genever Settlement Agreement by entry, on October 8, 2021, of its *Order Granting Debtor's Second Renewed Motion to Approve the Revised Settlement Agreement* (ECF No. 141) (the "Settlement Order"), this Court is in the best position to hear the dispute concerning the appropriate forum for the Ownership Dispute and interpret its own Settlement Order and the Genever Settlement Agreement. Due to the commencement of an adversary proceeding against Bravo Luck by Genever (US), this issue is no longer hypothetical, but is a rapidly approaching reality that will need to be heard in the near term. It is the exact opposite of judicial efficiency and economy to transfer this case and immediately require the Connecticut Bankruptcy Court to get up to speed on the history of the Genever Settlement Agreement and then interpret this Court's Settlement Order and the Genever Settlement Agreement. Additionally, transferring this case to the Connecticut Bankruptcy Court to hear and determine a dispute related to the Genever Settlement Agreement will be duplicative and costlier to the courts and the parties. Therefore, the interpretation of the Genever Settlement Agreement is a gating issue that should be determined by this Court as the Court that entered the Settlement Order, prior to this Court's consideration of the venue transfer request—because if it is held that the Genever Settlement Agreement requires the Ownership Dispute to be resolved as part of the BVI Litigation, then there is no immediate need for transfer to the Connecticut Bankruptcy Court or coordination with the Individual Debtor Case.

15. Even if the Genever Settlement Agreement is found to not limit the Ownership Dispute to the BVI Litigation, it is still more efficient and in the interest of judicial economy to allow the Ownership Dispute to be decided in the BVI.

16. With respect to the BVI Litigation, the litigation has been pending for over two years, including a year of discovery, and the parties thereto have already filed the equivalent of a complaint, answer and counter-claims, and an answer to the counter-claims. To transfer venue of the Genever (US) Case and allow the Trustee to bring the Ownership Dispute before the Connecticut Bankruptcy Court (which the Trustee has already attempted to do by initiating an adversary proceeding against Bravo Luck in the Individual Debtor Case to manufacture a basis to transfer venue) is not only impermissible forum-shopping, but it will delay the resolution of these important issues, duplicate work that has already been performed by each party and their counsel, and be more expensive to everyone as a result of the duplication of work. In contrast, there is no reason why the Trustee cannot litigate these issues in the BVI Litigation as he has stepped into the shoes of the Individual Debtor against PAX's claims asserted therein *and has already retained BVI counsel. See* Individual Debtor Case, *Order (A) Granting Application of Chapter 11 Trustee for Entry of Order, Pursuant to Bankruptcy Code Sections 327, 328, and 330, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1, Authorizing and Approving Retention and Employment of Harney Westwood and Riegels LP, as British Virgin Islands Counsel to the Chapter 11 Trustee and (B) Authorizing and Approving Estate's Entry into Director Services Agreement* (ECF No. 909).

17. In addition to being more efficient and economical—both to the courts and the parties—denying the Motion and allowing the Genever (US) Case to proceed in this Court will not prejudice creditors in the Individual Debtor Case. After all, if it is determined that Bravo Luck has no claim (either as to ownership or debt), then all of the proceeds from the sale of the Sherry-Netherland Apartment will presumably flow to the Individual Debtor's creditors (if any). The Movants argue that, because the Individual Debtors' creditors were not noticed with respect to the bar date in the Genever (US) Case, such creditors were prevented from asserting alter ego claims and are being structurally subordinated to those creditors that were served with the bar date and

filed claims directly against Genever (US). First, this argument is completely speculative because no bar date has been set in the Individual Debtor Case. Once a bar date is established and lapses in the Individual Debtor Case, there may be no creditors with valid claims against the Individual Debtor, including, but not limited to, because the PAX judgment against the Individual Debtor is currently on appeal. Second, this argument is only relevant if Bravo Luck is determined not to be the ultimate beneficial owner of the Genever Entities and the Sherry-Netherland Apartment. If the Ownership Dispute is resolved in Bravo Luck's favor, then there is no reason for the Genever (US) Case to be transferred to the Connecticut Bankruptcy Court and zero reason for the Genever (US) Case, at that point, to be jointly administered with the Individual Debtor Case. Moreover, transfer of the Genever (US) Case and coordination with the Individual Debtor Case will increase the Genever (US) estate's costs and expenses, as well as the costs and expenses incurred by parties involved in the Genever (US) Case, due to the much more active docket[9] in the Individual Debtor Case. In contrast, if the Ownership Dispute is decided adversely to Bravo Luck, such that Bravo Luck is not found to be the ultimate owner of the Genever Entities, a chapter 11 plan for Genever (US) could be amended to provide for a subsequent notice period for the Individual Debtor's creditors and proceeds of the sale of the Sherry-Netherland Apartment could be escrowed until such subsequent claims bar date has expired.

    *ii. Whether the Parties Would be Able to Receive a Fair Trial in Each of the Possible Venues*

  18. While Bravo Luck does not question the impartiality of the Connecticut Bankruptcy Court, the Individual Debtor Case is replete with issues and allegations that are completely unrelated to the Ownership Dispute. Although the Ownership Dispute is a discrete issue that should be decided on its own merits, should the Ownership Dispute be brought before

---

[9] In the eight months that the Individual Debtor Case has been pending, there are almost a thousand docket entries compared to just over 200 docket entries in the Genever (US) Case, which has been pending for two years.

the Connecticut Bankruptcy Court, there would certainly be miscellaneous, unrelated conjecture injected into the matter. The Trustee demonstrated exactly this tactic in the Motion by making unsupported accusations and conclusions against Bravo Luck and the Ownership Dispute and the introduction of completely irrelevant allegations, such as those related to the *Lady May*.

19. Additionally, Genever (US) is a second tier downstream subsidiary, where the ownership of the ultimate parent is very much in dispute. The Individual Debtor's creditors are not the same as Genever (US)'s creditors nor has any court found them to be, despite the unsubstantiated allegations by the Trustee and PAX to the contrary. Therefore, this factor (and the venue determination as a whole) should not be based on the Movants' argument that the Connecticut Bankruptcy Court is in the best position to address the rights of all of the Individual Debtor's creditors, Motion, ¶ 39, because the Individual Debtor's creditors have not been found to hold claims against Genever (US).[10]

> iii. *Remaining Factors—New York Has an Interest in Retaining Jurisdiction; Enforceability of Judgment[11]; and Genever (US)'s Original Choice of Forum*

20. In addition to the economic and efficient administration of the bankruptcy estate (which strongly weighs against transfer in this case), other factors also weigh heavily against a change of venue. In particular, as detailed above, Genever (US)'s primary asset is located in New York and subject to New York state laws, including, but not limited, to complicated real estate and co-op laws that will be implicated as the sale process of the Sherry-Netherland Apartment proceeds to conclusion. New York and this Court have an interest in resolving this sale

---

[10] There is a simple mechanism to preserve the status quo pending resolution of the Ownership Dispute and a determination as to whether the Individual Debtor's creditors hold alter ego claims against Genever (US)—an escrow of the proceeds from the sale of the Sherry-Netherland Apartment.

[11] Bravo Luck agrees with the Movants that the enforceability of judgment is a neutral factor. *See* Motion, ¶ 41.

process and authorizing and, where necessary, interpreting, the attendant approvals and transfer documents.

21. The Genever (US) Case was also the first-filed case in comparison to the Individual Debtor Case and, thus, the continuation of the Genever (US) Case in this Court should be given appropriate deference. The Movants argue that the Connecticut Bankruptcy Court has a "strong interest" in deciding controversies involving the Individual Debtor because of the pending Individual Debtor Case. *See* Motion, ¶ 40. This Court, however, has an equal interest in deciding controversies involving Genever (US) and the extent of its estate, and this Court has an even greater interest in deciding such issues in the Genever (US) Case because of (i) the Manhattan location of the central asset at issue; (ii) the controversies that this Court has already heard and decided; (iii) the fact that the Genever (US) Case has been pending for two years (including almost a year and a half prior to the Individual Debtor's petition date); and (iv) all that remains in this case is to confirm a chapter 11 plan[12] to address claims resolutions and distributions after resolution of the Ownership Dispute. To the extent the Trustee wants to transfer venue to jointly administer the Genever (US) Case and Individual Debtor Case, the Trustee should seek to transfer venue of the Individual Debtor Case to this Court—as the second-filed case and because keeping the Genever (US) Case in this Court promotes efficient administration and judicial economy.

22. Taken as a whole, and with efficient administration and judicial economy being afforded the most significance, the interest of justice analysis clearly weighs in favor of denial of the Motion and retention of this Court's jurisdiction over the Genever (US) Case.

---

[12] Prior to the commencement of the Individual Debtor Case, it was anticipated that such a chapter 11 plan was going to be consensually agreed to amongst all the parties in the Genever (US) Case. *See Debtor's Disclosure Statement* (ECF No. 165) ("The Debtor anticipates that the Plan will gain the support of creditors and achieves the overriding goal of implementing the parties' Global Settlement establishing procedures for the marketing and sale of the Debtor's Residence while the pending litigations between Bravo Luck Limited, Miles Kwok and Pacific Alliance Asian Opportunity Fund proceed to conclusion.") (formatted from uppercase original text).

### B. Transfer of this Case is Would Not Increase the Convenience of the Parties.

23. As to convenience of the parties, courts analyze the following factors:

    1. proximity of creditors of every kind to the court;
    2. proximity of the debtor;
    3. proximity of witnesses necessary to the administration of the estate;
    4. location of the assets;
    5. economic administration of the estate; and
    6. necessity for ancillary administration if liquidation should result.

*Dunmore*, 380 B.R. at 676 (*citing In re B.L. of Miami*, 294 B.R. 325, 329 (Bankr. D. Nev. 2003) (*citing Consol. Equity Prop., Inc. v. Southmark, Corp. (In re Consol. Equity Prop., Inc.*), 136 B.R. 261, 266 (D. Nev. 1991); CORCO, 596 F.2d at 1247)). "The most weight is given to the promotion of the economic and efficient administration of the estate." *Id*. All of the factors regarding the convenience of the parties weigh in favor of denying the Motion.

   *i.   Proximity of Creditors*

24. The Movant asserts that this first factor either favors transfer or is neutral, however, it clearly favors denial of the Motion, such that venue of the Genever (US) Case remains with this Court. The Sherry-Netherland, located in New York, holds an administrative claim against Genever (US) and is a critical creditor in light of its consent rights related to the sale of the Sherry-Netherland Apartment. Furthermore, PAX itself filed the New York Action against the Individual Debtor in New York Supreme Court. Whereas, in comparison, while Connecticut may be a neighboring state, neither the creditors[13] nor Genever (US)'s property have any connection to Connecticut.

---

[13] Additionally, the Local Rules of Bankruptcy Procedure for the District of Connecticut require parties appearing in the Connecticut Bankruptcy Court to be represented by counsel not only barred in the State of Connecticut, but with an office in Connecticut. This greatly limits parties' ability to appear in the Individual Debtor Case because there is a smaller bar of bankruptcy attorneys with offices in Connecticut—simply due to the State's small geographical size. For example, Bravo Luck's undersigned counsel does not have an office in Connecticut and, thus, Bravo Luck would need to engage separate Connecticut counsel before it could appear in the Individual Debtor Case—and in the Genever (US) Case if it would be transferred to the Connecticut Bankruptcy Court.

    *ii.*  *Proximity of the Debtor*

  25.  While the Debtor may be controlled by the Trustee by virtue of the Corporate Governance Order, the Debtor was created with the purpose of holding real estate and, at least initially, to hold real estate located in New York City. Moreover, the Trustee himself is based in New York City. *See* https://www.paulhastings.com/professionals/lucdespins. Therefore, this factor also favors denial of the Motion.

    *iii.*  *Proximity of Witnesses Necessary to Estate Administration*

  26.  Admittedly, while some of the witnesses in this case may reside outside of New York (and for that matter, outside of Connecticut as well), several are native to New York, including any potential witness on behalf of the Sherry-Netherland. Additionally, New York is a hub of national and international travel and, in fact, most out-of-state witnesses appearing in the Connecticut Bankruptcy Court are likely to fly into one of New York's airports and arrange travel to Connecticut from there.

  27.  Additionally, even if some witnesses will be involved in both the Genever (US) Case and the Individual Debtor Case, this does not in any way speak to the proximity of witnesses necessary to estate administration. Should the Ownership Dispute be heard in the Connecticut Bankruptcy Court (which Bravo Luck strongly believes would be inappropriate), the witnesses may still need to appear on different dates for the Ownership Dispute and other issues in the Individual Debtor Case. Transfer of venue would not ensure that witnesses would take fewer trips, or incur less expense, to appear in litigation related to Genever (US) or the Individual Debtor.

  28.  Again, the potential witnesses related to the Genever (US) Case are either already located in New York or would have an easier time (and likely more cost efficient) arranging travel to New York instead of Connecticut. Therefore, the proximity of witnesses necessary to estate administration favors denial of the Motion

### iv. Location of the Assets

29. Genever (US)'s primary asset is the Sherry-Netherland Apartment, located on Fifth Avenue in New York City. *See In re Kona* 62 B.R. at 172 (citing favorably to *In re Greenridge Apartments*, 13 B.R. 510 (Bankr. D. Haw. 1981), which "held that the favored forum is the district in which the primary asset is located."). Additionally, in light of the ongoing sales process for the Sherry-Netherland Apartment, decisions regarding New York state law and, in particular, New York real estate or co-operative law, may become necessary. This Court is in a better position to address those aspects of the Genever (US) Case in light of its familiarity with New York state law by virtue of where this Court sits. *See id.* ("In the instant case, the transaction for the purchase of the Hotel took place in Hawaii and the disputes concerning leases, liens on the property, and the propriety of the purchase transactions will be governed by Hawaii law. In the course of the proceedings, the Bankruptcy Court also may be required to make rulings in accordance with the laws of Hawaii, and the Court for the District of Hawaii is in a better position to make such rulings.").

30. The Movants argue that location is a less compelling factor in light of the relative proximity between New York and Connecticut. To the extent that argument is relevant, it can at most make the location factor neutral. This argument, however, misses the point of the importance of the location of the assets to the Genever (US) Case, where the central plan for creditor recoveries involves the effective marketing, sale and transfer of the Sherry-Netherland Apartment. *See In re Rehoboth Hospitality, LP*, 2011 Bankr. LEXIS 3992, at *14-*16 (Case No. 11-12798 (KG)) (Bankr. D. Del. 2011) (finding that venue was more appropriate in jurisdiction where debtor's primary asset (a hotel) was located because that bankruptcy court had "greater familiarity with the locale and physical property at issue" and because the bankruptcy court would be required to interpret and apply that jurisdiction's real property law, which the bankruptcy court sitting in the same jurisdiction was "uniquely positioned to determine" and which would save the

estate time and money given that court's "familiarity and knowledge with those issues'). Moreover, the Genever (US) Case is essentially a single asset case and, thus, "the location of the lone improved real estate asset is of particular concern to the Court, especially in the event of a potential liquidation, and the case is 'better administered by a court in the district in which it is located.'" *Id..*, 2011 Bankr. LEXIS 3992, at *16 (*citing In re Midland Assoc's,* 121 B.R. 459, 461 (Bankr. E.D. Pa. 1990)). Thus, this factor strongly weighs in favor of denial of the Motion.

     v. *Economic Administration of the Estate*

    31. As extensively addressed above, Genever (US)'s estate will be more economically administered if its case remains in this Court. Again, Genever (US)'s case has been pending for two years and is substantively resolved in light of the Genever Settlement Agreement, which set the path for Genever (US)'s ultimate exit from bankruptcy after the sale of the Sherry-Netherland and distribution to creditors with allowed claims after resolution of the Ownership Dispute via the BVI Litigation. It cannot be overstated that the entire purpose of the Genever Settlement Agreement was to create a framework for efficiently resolving this case. Venue transfer will undoubtedly vitiate all of the hard work that went into that effort. The Trustee is not a trustee in the Genever (US) Case. Rather, he is at best standing in the shoes of a disputed equity holder of a downstream debtor in possession. Additionally, there are gating issues related disagreement between the Trustee and Bravo Luck about the parties' intentions with respect to the Genever Settlement Agreement and the appropriate forum to hear the Ownership Dispute—the critical importance of which is highlighted by the adversary proceedings commenced against Bravo Luck by the Debtor and Trustee just three days before this Objection was due. To further judicial economy, this dispute should be heard by this Court as it is familiar with the history and hard-fought negotiations that underpinned the Genever Settlement Agreement and, as the Court that entered the Settlement Order, is in the best position to interpret the order.

131074792

32. It will also cost the estates and parties time and expense to get the Connecticut Bankruptcy Court up to speed on the Genever (US) Case generally, as well as the Ownership Dispute specifically, when the Ownership Dispute has already been pending in the BVI Litigation for two years and the Trustee has retained BVI counsel. Furthermore, the Individual Debtor Case is much more active in light of the Trustee's investigations and to draw Genever (US) and its creditors into the chaos of that case at this time would also increase the Genever (US) estate's fees and costs to the detriment of economic administration.

33. Lastly, denial of Motion at this time will not prejudice the Trustee or any of the Individual Debtors' creditors. As detailed above, it is more efficient and economical and promotes judicial economy to keep the Genever (US) Case with this Court until the Ownership Dispute is resolved in the BVI Litigation (or another forum depending on resolution of the Genever Settlement Agreement dispute). Moreover, if the Ownership Dispute is ultimately resolved against Bravo Luck, such that the Individual Debtor's creditors may have alter ego claims against Genever (US), the Court can easily preserve the status quo with respect to any such claims.

      *vi.*    *Necessity for Ancillary Administration if Liquidation Should Result*

34. When this factor is afforded weight, it is based on the location of the debtor's assets. *See*, *e.g.*, *In re Hermitage Inn Real Estate Holding Co., LLC*, 2019 Bankr. LEXIS 1862, *44 (Case No. 19-10214) (Bankr. D. Vt. June 19, 2019) ("The inquiry about possible ancillary administration as a factor in a venue determination is only rarely afforded significant weight, and, when it is, the inquiry focuses on the location of a debtor's assets.") (internal citation omitted). In fact, in both *Dunmore* and *Hermitage*, the courts weighed this factor in favor of the location where the debtor's assets were located because it was best for the marketing and sale of those asset to be conducted as close to the assets' location as possible. *See Dunmore*, 380 B.R. at 677 ("another factor pointing to California venue is that the Debtor is already in the process of liquidating. Marketing and selling its California real estate assets can best be overseen by a

California bankruptcy court with greater familiarity with the market.") (internal citation omitted); *Hermitage Inn*, 2019 Bankr. LEXIS 1862, *44-*46; *see also In re Rehoboth Hospitality*, 2011 Bankr. LEXIS 3992, at *14-*16. Here, Genever (US) is liquidating after the Sherry-Netherland Apartment is sold via the sale process approved pursuant to the Settlement Order and, thus, this factor is particularly relevant and weighs in favor of denial of the Motion.

35. The Movant argues that the Connecticut Bankruptcy Court is familiar with the Sherry-Netherland Apartment and surrounding issues and, therefore, is able to handle any ancillary liquidation proceedings. *See* Motion, ¶ 50. This factor, however, does not relate to whether a court in a jurisdiction other than the jurisdiction where the debtor's assets are located may be able to get up to speed on ancillary liquidation proceedings, but rather is that such ancillary administration should occur in the same state that liquidation occurred. Just as in *Dunmore*, *Hermitage*, and *Rehoboth*, venue should lie in the jurisdiction where the assets being liquidated are located because the court in that jurisdiction is familiar with the market and best able to oversee the marketing and asset sale. Here, that jurisdiction is New York.

36. Based on all of the foregoing factors, and in particular the economic administration of the estate and the necessity of ancillary liquidation proceedings, the convenience of the parties heavily weighs in favor of denial of the Motion and jurisdiction of the Genever (US) Case remaining in this Court.

*[Signature page follows]*

## CONCLUSION

WHEREFORE, for the reasons set forth above, Bravo Luck respectfully requests that the Court deny the Motion.

Dated: October 14, 2022
      Philadelphia, PA

**TROUTMAN PEPPER
HAMILTON SANDERS LLP**

By: */s/ Francis J. Lawall*
Francis J. Lawall (PA Bar No. 43932)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Telephone: (215) 981-4000
Facsimile:  (215) 981-4750
E-mail: francis.lawall@troutman.com

*Counsel for Bravo Luck Limited*